IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT H. AYLOR, JR., On Behalf of Himself and All Others Similarly Situated, | : | |
| | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 05-CV-00222 (SLR) |
| | : | |
| v. | : | Related Cases: |
| | : | 1:05-CV-00242 (SLR) |
| XYBERNAUT CORPORATION, | : | 1:05-CV-00256 (SLR) |
| EDWARD G. NEWMAN, STEVEN A. | : | 1:05-CV-00268 (SLR) |
| NEWMAN, M.D., AND THOMAS D. | : | 1:05-CV-00310 (SLR) |
| DAVIS, | : | 1:05-CV-00334 (JJF) |
| | : | 1:05-CV-00354 (SLR) |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF THE
AL MESNAD GROUP'S MOTION FOR THE CONSOLIDATION OF ALL
RELATED ACTIONS, TO BE APPOINTED LEAD PLAINTIFF, AND FOR
THE APPROVAL OF SELECTION OF CO-LEAD AND LIAISON COUNSEL**

PRICKETT, JONES & ELLIOTT, P.A.
James L. Holzman (DE Bar #663)
J. Clayton Athey (DE Bar #4378)
1310 King Street
Box 1328
Wilmington, DE 19899
Telephone: (302) 888-6500
*Proposed Liaison Counsel for The Al Mesnad
Group*

Dated: June 14, 2005

COHEN, MILSTEIN, HAUSFELD
  &amp; TOLL, P.L.L.C
Steven J. Toll
Daniel S. Sommers
Scott L. Adkins
Jason M. Leviton
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005
Telephone: (202) 408-4600
*Proposed Co-Lead Counsel for The Al Mesnad Group*

**[ADDITIONAL COUNSEL LISTED ON NEXT PAGE]**

19625.1\276779v1

MURRAY, FRANK & SAILOR LLP
Eric J. Belfi
275 Madison Avenue
New York, N.Y. 10016
Tel:  (212) 682-1818
Fax:  (212) 682-1892
*Proposed Co-Lead Counsel For The Al Mesnad Group*

GLANCY, BINKOW & GOLDBERG LLP
Michael Goldberg
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Tel:  (310) 201-9150
Fax:  (310) 201-9160

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. ii

I.    INTRODUCTION ................................................................. 1

II.    FACTUAL BACKGROUND ................................................... 2

III.    PROCEDURAL BACKGROUND ............................................ 6

IV.    ARGUMENT ......................................................................... 7

    A.    These Actions Should Be Consolidated ............................ 7

    B.    Movants Are The Most Adequate Plaintiffs ....................... 8

        1.    The Legal Requirements Under The PSLRA ............... 8

        2.    Movants Satisfy The Requirements of Rule 23 ............ 9

    C.    The Court Should Approve The Proposed Lead Plaintiffs' Choice Of Co-Lead and Liaison Counsel .............................................................. 11

V.    CONCLUSION ..................................................................... 12

## Table of Authorities

**Cases**

*A.F.I.K. Holding SPRL v. FASS*,
   216 F.R.D. 567 (D.N.J. 2004)..............................................................9, 10

*Chisholm v. TranSouth Fin. Corp.*,
   184 F.R.D. 556 (E.D. Va. 1999) ............................................................... 10

*EZRA Charitable Trust v. Rent-Way, Inc.*,
   136 F. Supp. 2d 435 (W.D. Pa. 2001) ..................................................... 10

*Fields v. Biomatrix, Inc.*,
   198 F.R.D. 451 (D.N.J. 2000) .................................................................. 10

*Hargett v. Alley Fed. Sav. Bank*,
   60 F.3d 754 (11th Cir. 1995) ..................................................................... 7

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ...................................................................... 9

*In re Cell Pathways, Inc., Sec. Litig., II*,
   203 F.R.D. 189 (E.D. Pa. 2001) ............................................................... 10

*In re Cendant Corp. Litig.*,
   182 F.R.D. 476 (D.N.J. 1998)...............................................................7, 10

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ....................................................................... 9

*In re Crayfish Co. Sec. Litig.*,
   2002 WL 1268013 (S.D.N.Y. June 6, 2002) ........................................... 10

*In re Donnkenny Sec. Litig.*,
   171 F.R.D. 156 (S.D.N.Y. 1997) ................................................................ 9

*In re Microstrategy Sec. Litig.*,
   110 F. Supp. 2d 427 (E.D. Va. 2000) ........................................................ 7

*In re Nice Systems Sec. Litig.*,
   188 F.R.D. 206 (D.N.J. 1999)................................................................... 11

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) ......................................................... 10

*In re Telxon Corp. Sec. Litig.*,
   67 F. Supp. 2d 803 (N.D. Ohio 1999)........................................................ 7

*Miller v. United States Postal Serv.*,
   729 F.2d 1033 (5th Cir. 1984).................................................................... 7

*Switzenbaum v. Orbital Sciences Corp.*,
   187 F.R.D. 246 (E.D. Va. 1999) ................................................................ 7

*Vincelli v. National Home Health Care Corp.*,
   112 F. Supp. 2d 1309 (M.D. Fla. 2000) ..................................................... 8

*Weltz v. Lee*,
   199 F.R.D. 129 (S.D.N.Y. 2001) ............................................................... 7

*Wenderhold v. Cylink Corp.*,
   188 F.R.D. 577 (N.D. Cal. 1999)............................................................... 8

*Werner v. Satterlee, Stephens, Burke & Burke*,
   797 F. Supp. 1196 (S.D.N.Y. 1992)........................................................... 7

**Docketed Cases**

*Heilman et. al. v. Xybernaut Corporation et. al.,*
    Cause No. 1:05-CV-00525 (E.D. Va. May 9, 2005 .................................................... 3

**Other Authorities**

15 U.S.C. § 78u-4 ............................................................................................................ 1
15 U.S.C. § 78u-4(a)(1) ................................................................................................... 8
15 U.S.C. § 78u-4(a)(2) ................................................................................................. 11
15 U.S.C. § 78u-4(a)(3) ........................................................................................... passim
17 C.F.R. § 240.10b-5 ...................................................................................................... 1

## I.    **INTRODUCTION**

Pursuant to Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA, 15 U.S.C. § 78u-4, and for the reasons set forth below, Khalid Nassera Al Mesnad, Edward J. Paige, Nurol Menjul Kiymetler A.S., and Joyce R. Starr (collectively the "Al Mesnad Group" or "Movants") respectfully move this Court for an order appointing them as the Lead Plaintiffs on behalf of all persons, excluding defendants, who purchased and/or otherwise acquired the securities of Xybernaut Corporation ("Xybernaut" or the "Company") during the period from May 10, 2002 through April 8, 2005, inclusive, (the "Class Period"), and for approval of their selection of Cohen, Milstein, Hausfeld & Toll, P.L.L.C. ("Cohen Milstein") and Murray, Frank & Sailor LLP ("Murray Frank") as co-Lead Counsel and Prickett, Jones & Elliott, P.A. ("Prickett Jones") as Liaison Counsel.

At least seven actions have been filed in this Court against Xybernaut, four of its officers and/or directors, and its auditor Grant Thornton LLP (collectively, "Defendants"), for violations of Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5.[1]   The complaints allege that the market price of Xybernaut securities was distorted during the Class Period as a result of Defendants' material misrepresentations and omissions concerning Xybernaut's growth prospects.

_____

[1]      It should be noted that additional cases alleging the same or similar violations by Defendants are currently pending in the Eastern District of Virginia.  Moreover, plaintiffs in the Virginia actions filed a motion with the Judicial Panel on Multidistrict Litigation on June 10, 2005 to transfer all related actions to the Eastern District of Virginia.  To date, no order has been entered transferring the related cases.

During the Class Period, Movants acquired Xybernaut securities, as set forth in Exhibit B to the Declaration of James L. Holzman ("Holzman Decl.") filed herewith. To Movants' knowledge, these investments exceed those of any other group of plaintiffs in this Action. Thus, under the PSLRA, Movants are presumptively the group of persons that are the "most adequate plaintiffs" and should be appointed as Lead Plaintiffs because they have the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Movants are represented in this action by the firms seeking appointment as co-Lead Counsel, Cohen Milstein and Murray Frank, and Prickett Jones as Liaison Counsel, which are qualified to prosecute these securities fraud claims.

## II.    FACTUAL BACKGROUND[2]

Xybernaut is a Delaware corporation headquartered in Fairfax, Virginia and is engaged in the research, development, manufacture, marketing and sales of mobile, wearable computing and communication systems, and software and service solutions to enhance product management, asset management, and the accuracy, timeliness and utilization of captured data. Throughout the Class Period, Xybernaut reported quarter after quarter of positive results in press releases and filings with the SEC. The Company attributed the positive results to, among other things, the sale of its handheld and wearable computer devices, as well as cost-cutting programs, financing, intellectual property licensing strategies, strategic partnerships and securing key accounts in the transportation, retail, military and homeland security sectors. For example, in a press release announcing the Company's fourth quarter and full-year 2003 results, defendant Edward G. Newman, Chief Executive Officer and Chairman of Xybernaut, stated, "Management firmly believes that *the best is yet to come* and *we expect to extend the positive momentum the Company*

*is currently experiencing*." (Emphasis added).  In reaction to Defendants' statements, the price of Xybernaut stock traded as high as $2.56 per share during the Class Period (on September 18, 2003).  Unbeknownst to the Class, these statements were materially false and misleading because Defendants failed to disclose that the Company's purported success was the result of, in material part, improper accounting, made possible by a serious breakdown in the Company's internal controls.

The truth began to emerge on February 17, 2005.  On that day, after weeks of decline in the price of Xybernaut stock, the Company issued a press release stating "that it knows of no business reason or financial condition that would explain the decline in its stock price."  In reaction to this announcement, the price of Xybernaut stock closed higher at $0.92 per share, up $0.07 from its closing price on February 16, 2005.

On March 31, 2005, after the market closed, Defendants issued a press release revealing that they discovered material weaknesses in Xybernaut's internal controls with respect to expense reimbursement, revenue recognition, and the monitoring of business risks.  The Company stated that it had engaged independent legal counsel to conduct an internal investigation of these matters.  The Company said as a result of the investigation, it could not predict when it would file its 2004 annual report with the SEC, and cautioned that the delayed filing would prevent the Company from registering additional shares of stock.  In addition, the Company revealed for the first time that, on February 1, 2005, nearly two months earlier, it had received a subpoena from the SEC seeking documents relating to the sale of securities by an unidentified shareholder.  Xybernaut also announced that it had received notification from

---

2      The factual allegations set forth herein were taken from the complaint captioned *Heilman et. al. v. Xybernaut Corporation et. al.*, Cause No. 1:05-CV-00525 (E.D. Va. May 9, 2005).

Nasdaq that the Company's stock, which had been trading below $1.00 per share, was subject to delisting. In reaction to this news, the price of Xybernaut dropped another $0.18 per share from its closing price of $0.42 on March 31, 2005, to close at $0.24 on April 1, 2005.

On Friday, April 8, 2005, Defendants disclosed that the Company had received a letter from its auditor, Grant & Thornton LLP, questioning the accuracy and reliability of the Company's accounting and related disclosures; the Company's historical financial statements for fiscal 2002 and 2003; and the Company's financial statements for the interim first, second, and third quarters of 2002 and 2003. In reaction to this news, the price of Xybernaut stock, which had already fallen $0.53 per share since the Company's March 14, 2005 announcement that it would not be able to file its annual report, fell another $0.06 to close at $0.13 on the next trading day, Monday, April 11, 2005.

Less than two weeks later, on April 19, 2005, after the market had closed, the Company announced the completion of its internal investigation. Despite the report's lack of specificity, it made clear that the Company's management had engaged in serious undisclosed wrongdoing that had a material impact on the Company's financial condition and performance, and which rendered all statements by Defendants suspect. The release stated in part, as follows:

    1.    The Company's Chairman and CEO, Edward G. Newman, improperly used substantial Company funds for personal expenses and failed properly to substantiate expenses charged to the Company.

    2.    Members of the CEO's family employed by the Company were hired and evaluated/not evaluated in direct violation of the Company's anti-nepotism policy and constituted a "protected class" of employees.

    3.    The employment of certain members of the CEO's family was not disclosed in SEC filings as required by SEC disclosure regulations.

4.  There has been a lack of adherence to effective disclosure controls governing the Company's public disclosures and the issuance of press releases.

5.  Major transactions were entered into by certain members of senior management in violation of Company internal controls. Certain members of senior management failed properly to advise the Board of material financial conditions regarding major transactions.

6.  Certain members of senior management failed to disclose to the Audit Committee and the Board written correspondence by the Company's former Chief Financial Officer outlining serious concerns over the breakdown of internal controls; and

7.  Edward G. Newman and Steven A. Newman affirmatively impeded the Audit Committee's investigation in material respects.

In response to the Audit Committee's Report and Recommendations, the Board today approved the following actions:

1.  Edward G. Newman was removed as Chairman of the Board and Chief Executive Officer of the Company, and from all other positions he holds with any Company subsidiaries or affiliates.

2.  Steven A. Newman was removed as President and Chief Operating Officer of the Company, and Vice Chairman of the Board, and from all other positions he holds with any Company subsidiaries or affiliates.

3.  The Board formally requested the resignations of Edward G. and Steven A. Newman as Directors of the Company, but neither individual has agreed to resign from the Board at this time.[3]

4.  Retired General William Tuttle was appointed as the Company's interim Chairman of the Board and Chief Executive Officer, while a search is conducted for new management.

5.  The Board authorized the retention of financial experts to assist the Board in maximizing shareholder value.

---

3     In a press release dated May 10, 2005, Xybernaut announced the resignation of Steven and Edward Newman from the Company's Board of Directors.

5

6.     In an effort to promote the independence of the Company's Board, three directors of the Company – James J. Ralabate, Dr. Edwin Vogt and Martin Weisberg, each of whom provides other services for the Company – offered to resign from the Board. The Board determined to defer its acceptance of these offers upon an orderly transition to a new Board.

As a result of the Company's massive fraud, the release also announced that Grant Thornton LLP resigned because "in its professional judgment, it can no longer rely on management's representations..." However, as is disclosed in the same release, Grant Thornton LLP was not as innocent as they may have proclaimed. For example,

[t]he report of Grant Thornton LLP on the Company's financial statements for the 2002 and 2003 fiscal years did not contain an adverse opinion or a disclaimer of opinion and were not qualified or modified as to uncertainty, audit scope, or accounting principles. In addition, in connection with the audits of the Company's financial statements ... there were no disagreements between the Company and Grant Thornton LLP on any matter of accounting principles or practices, financial statement disclosure, or auditing scope or procedure which, if not resolved to the satisfaction of Grant Thornton LLP, would have caused Grant Thornton LLP to make reference to the matter in connection with its report.

## III.   PROCEDURAL BACKGROUND

Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), counsel for plaintiffs in these actions published notices to class members on nationally circulated wire services.[4] The notice informed investors who purchased and/or otherwise acquired Xybernaut securities during the Class Period of the pendency of the lawsuit and the nature of allegations relating to Defendants' fraudulent statements that artificially distorted the market price of Xybernaut securities. The Exchange Act requires early notice in order to advise class members of their right to seek appointment as lead plaintiff within sixty days of the publication of the notice. *Id.* Movants have filed this motion within the sixty-day period.

6

IV.    **ARGUMENT**

A.    **These Actions Should Be Consolidated**

Presently pending in this district are at least seven related securities class action cases

filed against Xybernaut and other Defendants.  These actions, referred to as the "Related

Actions," are listed in the caption above.

The Related Actions all arise from the same set of events and allege substantially similar

factual and legal issues.  Each of the Related Actions has been filed pursuant to various

provisions of the federal securities laws, and name the same or similar Defendants.[5]  "The proper

solution to problems caused by the existence of two or more cases involving the same parties and

issues simultaneously pending in the same court would be to consolidate them under Rule 42(a)."

*Hargett v. Alley Fed. Sav. Bank,* 60 F.3d 754, 765 (11th Cir. 1995) (*quoting Miller v. United*

*States Postal Serv.,* 729 F.2d 1033, 1036 (5th Cir. 1984)).  "In securities actions where the

complaints are based on the same public statements and reports, consolidation is appropriate if

there are common questions of law and fact and the defendants will not be prejudiced." *Weltz v.*

*Lee,* 199 F.R.D. 129, 131 (S.D.N.Y. 2001) (quotations omitted); *Vincelli v. National Home*

---

4       The notice issued on April 15, 2005, which commenced the sixty-day period for filing of
motions for appointment of lead plaintiff, is attached as Holzman Decl., Ex. A.

5       Certain complaints filed against Xybernaut allege slightly different class periods and/or
defendants, including the Company's auditor Grant Thornton LLP.  However, the factual and
legal issues are nearly identical and do not prevent consolidation.  *See In re Microstrategy Sec.*
*Litig.*, 110 F. Supp. 2d 427, 431 (E.D. Va. 2000) ("the existence of slight differences in class
periods, parties, or damages among the suits does not necessarily defeat consolidation where the
essential claims and factual allegations are similar."), *In re Cendant Corp. Litig.*, 182 F.R.D.
476, 479 (D.N.J. 1998) (noting that different class periods, and different measures of damages
does not preclude consolidation); *Werner v. Satterlee, Stephens, Burke & Burke*, 797 F. Supp.
1196, 1211 (S.D.N.Y. 1992) (same).  Thus, courts routinely consolidate multiple class actions
that allege essentially similar, but not identical, securities claims.  *See, e.g., In re Telxon Corp.*
*Sec. Litig.*, 67 F. Supp. 2d 803, 806 (N.D. Ohio 1999); *Switzenbaum v. Orbital Sciences Corp.*,
187 F.R.D. 246, 247-48 (E.D. Va. 1999).

*Health Care Corp.*, 112 F. Supp. 2d 1309, 1313 (M.D. Fla. 2000) (same); *Wenderhold v. Cylink*

*Corp.*, 188 F.R.D. 577, 583 (N.D. Cal. 1999) (same).

All of the Related Actions were brought by investors who were injured by purchasing

and/or otherwise acquiring Xybernaut securities during the Class Period. Each action alleges

that during the Class Period, the price of Xybernaut securities was distorted due to the

dissemination of materially false and/or misleading information by the Defendants.

Consolidation of the Related Actions is thus appropriate as common questions of law and fact

predominate in these Related Actions. Fed. R. Civ. P. 42(a). Accordingly, the motion to

consolidate the Related Actions should be granted.

### B.    Movants Are The Most Adequate Plaintiffs

#### 1.    The Legal Requirements Under The PSLRA

The Exchange Act, as amended by the PSLRA, provides for a rebuttable presumption:

> that the most adequate plaintiff in any private action arising under
> this title is the person or group of persons that -
>
> (aa) has either filed the complaint or made a motion in response to
> a notice . . .;
>
> (bb) in the determination of the court, has the largest financial
> interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal
> Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(1).

In determining the motion, the Court must adopt a presumption that the most adequate

plaintiff is the person or group of persons who "has the largest financial interest in the relief

sought by the class" and who otherwise satisfies the requirements of Fed. R. Civ. P. 23. 15

U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted only by proof that the

presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the

class" or Ais subject to unique defenses that render such plaintiff incapable of adequately

representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see A.F.I.K. Holding SPRL v. FASS*,

216 F.R.D. 567, 571 (D.N.J. 2004); *In re Donnkenny Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y.

1997).

Movants suffered losses of approximately $963,507 as a result of their transactions in

Xybernaut securities.[6] *See* Movants' certifications and loss charts, Holzman Decl., Ex. B. Upon

information and belief, Movants as a group have the "largest financial interest in the relief sought

by the class" due to these investments in Xybernaut, and are presumptively the most adequate

plaintiffs to serve as Lead Plaintiffs. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). For these reasons, the

Court should appoint Movants as Lead Plaintiffs. *See In re Cavanaugh*, 306 F.3d 726, 730 (9th

Cir. 2002); *Donnkenny,* 171 F.R.D. at 157.

### 2.    Movants Satisfy The Requirements of Rule 23

The PSLRA requires that lead plaintiffs, in addition to having the largest financial

interest, must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil

Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *In re Cendant Corp. Litig.*, 264 F.3d 201, 222

(3d Cir. 2001). Rule 23(a) requires that (1) the class be so numerous that joinder of all members

is impracticable; (2) there are questions of law or fact common to the class; (3) such claims are

typical of those of the class; and (4) the representatives will fairly and adequately protect the

interests of the class. Fed. R. Civ. P. 23(a). Typicality and adequacy of representation are the

---

6    The losses suffered by Movants, as detailed herein, are not the same as legally
compensable damages, measurement of which is often a complex legal question, which cannot
be determined at this stage of the litigation. The approximate losses can, however, be
determined from the executed certification required under Section 21D of the Exchange Act and

only provisions relevant to the determination of lead plaintiff under the PSLRA. *Cendant*, 264 F.3d at 263; *A.F.I.K. Holding*, 216 F.R.D. at 571; *In re Crayfish Co. Sec. Litig.*, 2002 WL 1268013, at *4 (S.D.N.Y. June 6, 2002) (attached as Exhibit A hereto), *citing In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998) *and Weltz*, 199 F.R.D at 133.

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement of Rule 23 is satisfied where the representative's claims arise from the same event, practice, or course of conduct that gives rise to the claims of the class members, and are based on the same legal theory." *EZRA Charitable Trust v. Rent-Way, Inc.*, 136 F. Supp. 2d 435, 443 (W.D. Pa. 2001); *see also In re Cell Pathways, Inc., Sec. Litig., II*, 203 F.R.D. 189, 191 (E.D. Pa. 2001); *Fields v. Biomatrix, Inc.*, 198 F.R.D. 451, 456 (D.N.J. 2000). The typicality standard is met even where minor distinctions exist. *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998). As one court noted: "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class. Complete identification between the claims constituting each individual action is not required." *Chisholm v. TranSouth Fin. Corp.*, 184 F.R.D. 556, 563 (E.D. Va. 1999).

Movants' claims are typical of those of the Class. Movants allege, as do all class members, that Defendants violated the Exchange Act by making what they knew, or were reckless in not knowing, were false and/or misleading statements of material facts concerning Xybernaut's growth prospects and business plans during the Class Period. Movants, as did all

---

based upon reference to information concerning the market for the Xybernaut common stock. *See* Holzman Decl., Ex. B.

members of the Class, purchased or otherwise acquired Xybernaut securities during the Class

Period at prices artificially distorted by Defendants' misrepresentations and omissions. These

shared claims, which are based on the same legal theory and arise from the same events and

course of conduct as the class claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is

established that a representative party "will fairly and adequately protect the interests of the

class." Fed. R. Civ. P. 23(a)(4). In this Circuit, the adequacy of the class representative depends

upon the following two factors: (1) the plaintiff's attorney must be qualified, experienced, and

generally able to conduct the proposed litigation, and (2) the plaintiff must not have interests

antagonistic to the class. *In re Nice Systems Sec. Litig.,* 188 F.R.D. 206, 219 (D.N.J. 1999).

Movants are adequate representatives for the class. There is no antagonism between their

interests and those of the class.[7] Moreover, they have selected counsel highly experienced in

prosecuting securities class actions vigorously and efficiently, and has submitted their choice to

the Court for its approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

C.      **The Court Should Approve The Proposed Lead Plaintiffs' Choice Of Co-Lead and Liaison Counsel**

The PSLRA vests authority in the Lead Plaintiffs to select and retain Lead and Liaison

Counsel, subject to court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). Thus, a court should not

disturb a lead plaintiff's choice of counsel unless necessary to "protect the interests of the class."

---

7       Pursuant to 15 U.S.C. § 78u-4(a)(2)(A)(i), Movants executed certifications stating that they had reviewed the complaint, did not acquire the subject securities at their attorney's direction or in order to participate in any private action arising under the PSLRA, will not accept any payment for serving as a representative party beyond their pro-rata share of the recovery except as approved by the Court, and are willing to serve as representative parties on behalf of a class; and setting forth their transactions in the subject securities during the Class Period. *See* Holzman Decl., Ex. B.

11

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). Movants have selected Cohen Milstein and Murray Frank as co-Lead Counsel and Prickett Jones as Liaison Counsel for the Class. Cohen Milstein and Murray Frank have extensive experience in the areas of securities and complex litigation and have successfully prosecuted numerous securities fraud class actions on behalf of injured investors, including numerous cases in this Circuit. *See* Holzman Decl., Exhs. C, D and E. Thus, the Court will be assured that the Class will receive the highest caliber of legal representation available.

## V.     **CONCLUSION**

For the foregoing reasons, Movants respectfully request that the Court appoint them as Lead Plaintiffs on behalf of the Class and approve their selection of Cohen, Milstein, Hausfeld & Toll, P.L.L.C. and Murray, Frank & Sailor LLP as co-Lead Counsel and Prickett, Jones & Elliott, P.A. as Liaison Counsel.

Respectfully submitted,

**PRICKETT, JONES & ELLIOTT, P.A.**

James L. Holzman (DE Bar #663)
J. Clayton Athey (DE Bar #4378)
1310 King Street
Box 1328
Wilmington, DE 19899
Telephone: (302) 888-6500
Facsimile: (302) 658-8111

Dated: June 14, 2005

*Proposed Liaison Counsel For The Al Mesnad
Group*

**COHEN, MILSTEIN, HAUSFELD
  & TOLL, P.L.L.C**
Steven J. Toll
Daniel S. Sommers
Scott L. Adkins
Jason M. Leviton
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
*Proposed Co-Lead Counsel For the Al Mesnad
Group*

**MURRAY, FRANK & SAILOR LLP**
Eric J. Belfi
275 Madison Avenue
New York, N.Y. 10016
Tel: (212) 682-1818
Fax: (212) 682-1892
*Proposed Co-Lead Counsel For The Al Mesnad
Group*

**GLANCY, BINKOW & GOLDBERG LLP**
Michael Goldberg
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Tel: (310) 201-9150
Fax: (310) 201-9160

13

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2005, I electronically filed **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE AL MESNAD GROUP'S MOTION FOR THE CONSOLIDATION OF ALL RELATED ACTIONS, TO BE APPOINTED LEAD PLAINTIFF, AND FOR THE APPROVAL OF SELECTION OF CO-LEAD AND LIAISON COUNSEL** which will send notification of such filing to the following:

**ROSENTHAL, MONHAIT, GROSS & GODDESS**
Jessica Zeldin
Mellon Bank Center, Suite 1401
919 Market Street
Wilmington, DE 19899-1070

**CHIMICLES & TIKELLIS, LLP**
Pamela S. Tikellis
Robert J. Kriner
A. Zachary Naylor
Robert Davis
One Rodney Square, 5th Floor
920 King Street
Wilmington, DE 19801

**DRINKER BIDDLE**
David Phillip Primack
1100 North Market Street
Suite 1000
Wilmington, DE 19801-1254

**MILBERG WEISS, BERSHAD & SCHULMAN LLP**
Seth D. Rigrodsky
Ralph N. Sianni
Brian D. Long
919 North Market Street, Suite 411
Wilmington, DE 19801

**SMITH, KATZENSTEIN, & FURLOW**
Laurence V. Cronin
800 Delaware Ave.
P.O. Box 410
Wilmington, DE 19899

J. Clayton Athey (Bar ID #4378)
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE 19899
(302) 888-6507
jcathey@prickett.com
*Proposed Liaison Counsel for The Al Mesnad Group*